Good morning, Mr. Hacker. You have two minutes for rebuttal and you can begin whenever you're ready. Good morning, Your Honors, and may it please the Court. Like almost all general liability policies, the airport liability policy at issue in this case generally excludes coverage for pollution-related liabilities. But this policy exempts from that exclusion liabilities arising from pollution caused by specified emergency incidents. And when the evidence in the investigation shows that a claim is seeking recovery for the cost of pollution stemming from a combination of emergency and non-emergency causes, the policy provides for reimbursement of defense costs, but only, quote, that portion of defense costs that can be retroactively, retrospectively allocated to the emergency incident causes. The district court's decision misreads that exclusion and wrongly concludes that so long as emergency incidents at an airport are one possible, even minor, cause of any pollution, all defense costs are covered. Kennedy. What is the language of the policy that you are relying on to say that it requires, with respect to defense costs and allocation? So the combination, it's the exclusion itself read in combination, but the allocation in particular is the third clause, which establishes basically a special defense coverage rule. Right. But you're looking at A2. I'm not sure of what. But the part that says it basically changes the normal rule, right? It takes you out of the normal rule that if any of the claims, if any claim is covered, then there is a duty to defend the entire complaint. That's right. It's actually Clause 2 and 3 together override that equitable presumption, right, that when, you know, in a normal situation, a normal coverage case, so long as any claim is potentially covered, you have this duty to defend the entire suit, and the whole point of Clauses 2 and 3 and Clause 1 is to override that rule. If those clauses mean what you say they mean, they should have been written entirely differently, because they don't reference any of the things that you're now arguing. I know in your brief you say we're not arguing that a claim is a cause, but in order for us to read these sections, even in conjunction, we would have to conclude that when it says claim, it really means cause, wouldn't we? So I disagree with that. That's what the district court believes. I know, but I just don't understand. It's not defined any other way other than a claim. You talk about combined claims. That's why I was puzzled by the way you stated the policy language is not what the policy language is. The policy language is about situations where a claim or claims that are covered are combined with any claims that are excluded. I understand that, but that's what the district court did. No, that's what you're alluding to. No, no, I understand that. Excuse me, please. I just quoted you the language, right? That is the language of the policy. That's the language of Clause 2. We have to look at Clause 1. What I was about to say is the district court — No, no, no. Clause 1 is what says that only certain types of pollution are covered. We get that. That's clear. Then we get to Clause 2. This is the clause that changes the normal New York default rule about combined claims. And it says where there are combined claims, not only do you — I read this as saying not only do you have to defend — do you not have to defend the uncovered claims, you don't even have to defend the covered claims anymore. Right? It says claims excluded by Paragraph 1 or a claim covered by the policy when combined with any claims excluded. So if anything that's excluded is in there, you don't have to defend anything. Well, you have to pay for the costs, right, but retrospectively. Because that's what 3 says. Right. You don't take on the sort of ongoing duty. You don't take on the burden of defense. But you do have a reimbursement. But all of that in boldface is situations of covered claims. Right? So if — what the district court concluded was there was only a single claim. There was a single claim that was made against the airport by the DEC, because the DEC doesn't care how the pollution got in the ground. If the pollution is in the ground, they're obligated to clean it up. So that is one claim that was made against them, and the district court read this as there's one claim presented to you, that claim, on behalf of the DEC. So isn't the question whether that is one claim or two claims? Yes. That's the question that we have to decide. Right. But to answer that, I do think it's important not to jump past Clause 1, because Clause 1 does define coverage on the basis of causes. On the basis of coverage, yeah, that's fine. On the basis of causes, though. Of course. That depends what you're supposed to cover. Right. But the question is, your exclusion and your reversal, your opting out of the default New York rule is based on a question of covered claims. Correct. But here's the thing. Nothing in either Clause 1, 2, or 3 says that the claim is forever defined for purposes of how you're applying, especially Clauses 2 and 3, by the first paper that an environmental agency submits. Why not? Because it doesn't say anything like that, that the first paper is the only claim you can ever have. To the contrary, what Clause 2 and 3 read together are getting at. It says somewhere in the contract that you can disaggregate such a claim based on differential coverage. That's what the unitary claim. Right. It doesn't say unitary claim. And Clause 2 and Clause 3 are saying, when the evidence is showing that there are distinct, when you can break down the initial claim, which would never make, as Your Honor pointed out correctly, there would never be in an initial environmental claim a specification or two separate. Here's what their argument is, that this only applies when there are two separate PRP. But, counsel, this discussion here, at the very least, suggests there's ambiguity in the provision. And I understood New York law to say that when there's ambiguity in a provision, when it can be read in two ways, that you always rule in favor of the insured. Assuming that's correct, how do you overcome that? Because with respect, I don't believe this discussion shows ambiguity. What it shows is that you have to, indeed, parse the language, read it as a whole, and an ambiguity exists only when both sides, or in this case the insureds, reading of the language is reasonable when read in context. And the consequence of their reading is that this clause — It sounded like a lot of ambiguity discussion to me, one side reading it one way, the other side reading it the other way, both claiming to be plausible readings of the language. Well, what is definitely settled under New York law is the fact that two parties disagree over the reading is not itself sufficient to establish ambiguity. It's ambiguous because in the key clause here, there's no reference to cause at all. It only references claim. So at a minimum, to the extent you're trying to argue, well, you know, if you look at clause 2 in conjunction with clauses 1 and 3, it really means cause. But you do have to read it in the light of the objective and the context, and you wouldn't have. But we've got two different clauses. One is about coverage, which I grant you says that you have to pay for one kind of pollution and not for other kinds of pollution. So when the dust ball settles and it turns out, and I don't know what will turn out because I don't know, and I don't think anybody knows in this record, where the pollution is found on the property and whether some of it is just from leakage in barrels and storage, and some of it is from the, you know, some of it could be from the training exercises, but we don't know whether the training exercises took place on the same runway where the accident took place. All of that, sooner or later, that will all settle out, and you'll only have to pay for that which results from the damages. But now the question is coverage, the right to defend, which is governed by 2 and 3, and I don't see why you have to read a clause that talks about coverage into a clause which has the specific purpose of opting out, of contracting away from a default New York rule about the right to defend. So two reasons that I can give you, and the first one does go back to Clause 1, because Clause 1, it's not just about coverage. It says claims, right? It says claims unless caused by. So we know we're talking about claims from Clause 1. That's what it says, and you connect the claim to the cause. And as Your Honor just exactly correctly said, Judge Lynch, at the end of the case, even if there's one claim, at the end of the case, if, you know, half the pollution was caused by one thing and half was caused by another, everybody, I think, agrees that the policy is only going to cover the part of the claim attributable to the claim. But the actual pollution that is in the ground can be traced to the accident rather than to some other situation. We don't know whether that's the case or not the case. Well, so not quite what you're speculating. So you have one claim, and it may be that everything turns out to be covered at the end of the day, depending on the facts. But what Clause 2, and because you're right, they all use claim, but Clause 1 is telling you a claim depends on the cause, and the coverage for a claim depends on the cause. And what Clauses 2 and 3 are saying, when that claim has multiple causes and you're going to do exactly what Your Honor is talking about, I completely agree that there's going to be an allocation at the end of the case or when the facts establish what the causes are. We know from the facts already. It is not disputed that we already know that the pollution here was at least caused by, you know, excluded traditional pollution, and maybe by, there's actually not much evidence that any of it was caused by any crashes. In fact, there's no evidence. But the investigation is ongoing. I accept that. But the whole point is to say when the facts show that, so we're in the world. Remember, Claim Clause 1 says we're going to look at causes and determining whether a claim is covered and what part of it is covered. That's what's going on in Clause 2 and 3. What part of a claim is covered? A claim can be made that is very broad. And it may turn out that some part of that claim is not covered, but it's still part of the same claim. But just as Clause 1 says, we're only going to pay for the, you know, remediation that is attributable to emergency incidents. Clauses 2 and 3 are saying it's the same thing for the duty to defend. We're only going to reimburse defense costs attributable to emergency incidents. And the second reason, so the first reason is the connection between Clauses 1, 2, and 3. But the second reason, Your Honor, is the commercially unreasonable consequences. The reading is not a reasonable one because it erases, it erases Clauses 2 and 3, the functionality of them, because in essentially any claim of environmental pollution at an airport. There are examples on page 30 of their brief where you could have two claims for different harms caused on a piece of property at different times where one is covered and one is not. And, you know, the insurer puts in two claims and they said that Clause 2 would apply to that. Why isn't that a reasonable reading? Because they almost never happen. That kind of situation almost never occurs. They don't cite anything for the examples. It's also an empirical question that we have to make assumptions about what goes on in the world as opposed to what the policy contemplates, what the language of the contract talks about. I don't know anything about how often you get a claim that combines noise and interference with use of property as two separate things in the same complaint. But what you can infer directly from the language is that it is clearly trying to establish, just as Your Honor started off this whole argument by saying, overriding the basic principle that in an environmental kind of case. Doesn't that seem like something that apart from the normal rule that ambiguities are construed against you, when you're trying to contract out of the default rule imposed by state law, hadn't you better make that extremely clear as to exactly how you are opting out of it? Because this is a rather radical opting out. It's not just saying we don't have to cover the whole case. It's saying we don't have to defend even some part that is clearly covered and that we clearly would be on loan for so long as it's combined with a different claim. Except that, as we discussed earlier, it doesn't – all it says is we don't have the duty or obligation or right to assume control of the defense. We will pay for your defense costs. We're going to pay for them to the extent they're covered. But because there's an ongoing investigation and we're not going to determine, just as Your Honor said, until the end of the case or some point along, what we're going to do is reimburse you for the defense costs that are attributable to those claims, and if, as here, there are very few, if any, of those, then no, the defense ultimately won't be covered. But we are absolutely paying for the defense of covered costs. So it's not that radical. It's just establishing an allocation that makes sense in the environmental context, precisely because, as Your Honor started off by saying, you're not going to, at the beginning of the case, almost ever have a situation where, even in these combined scenarios, right, even in the combined scenarios, there would still be one claim according to them, because you have to have, like, separate, you know, lawsuits as to each of them that then get combined. When you have one paper that says I've got various, you know, harms here, we've got various claims, that, to them, is one claim. And they're very — We don't have to go that far, because that's not the situation here, right? We don't have to address that question. Well, I think we do with respect to, at least with respect to PRP letters, because they argue in their brief, and I think it's a necessary consequence of their argument, this point about there being one claim versus two claims. I know you weren't fighting that letter itself is one claim, right? It initiates a claim, but it evolves over time. But I think it is important to understand their argument that it can't be a combined claim, because those exist only when you start off with separate claims. And that is commercially unreasonable, because that's just never going to happen. All right. Thank you. Thank you, Your Honors. All right. Mr. Regano, you're up. Thank you very much, Your Honors. May it please the Court, my name is Nicholas Regano. I represent the town of Harrietstown, which is an appellee. What we have today is the insurer's attempt to effectively rewrite the policies, as Your Honors have referenced earlier. What they're trying to do is they're trying to advance or fast-forward the determination of allocation that happens on indemnity at the time when defense occurs. And they're trying to do that based on a policy provision that is clearly unambiguous as the lower court decided and Your Honors have already referenced here today. There is one claim in this case. The lower court determined that. The lower court spent approximately 10 pages discussing this very issue. There is one claim. It is the claim by the New York State Department of Environmental Conservation directing the town of Harrietstown to clean up the airport. Within that claim, the DEC has stated that plane crashes are at issue. Plane crashes are clearly covered under the policy terms. The insurers do not dispute that. In fact, counsel referenced that there is no evidence of plane crash contamination to date. That is incorrect. We have, in fact, detected plane crash contamination. And the town's testimony submitted below at 630 to 31 confirms that. In addition, the insurers confirm and admit that supplemental plane crash contamination investigation is required. So there is no dispute that plane crash contamination is at issue here. What I'd like to make clear is that their arguments rest on policy considerations, extraneous to the insurance policies themselves. That is an inappropriate argument to make. The New York State Court of Appeals has said that in Fieldstone v. Hermitage at 16NY3D257, which is cited in our brief. They are attempting to rewrite the policies based on those policy considerations. But those policy considerations are, in fact, incorrect. They're unsupported and incorrect. First off, regulators almost always know. I wouldn't say almost always, but more likely than not know the source of contamination. I mean, the most extreme example I could point out to Your Honors is the train derailment in East Palestine. Right? We all know that event. There's also, just the other day, I'm an environmental lawyer. I do this every day. Just the other day, somebody called me. A driller at the site drilled into the ground and pierced an oil tank. We know that the oil tank contamination was caused by that. At an airport, there could be glycol in the soil and groundwater from de-icing fluid. Or a fuel farm may have leaked. There's a million different ways that contamination can be caused. But all of these, almost always the regulators know what they are at the outset. That is also the case here because the New York State Department of Environmental Conservation, as it almost always does, conducted a site characterization to determine whether there is contamination at source areas. They determined that was the case. This is DEC's typical playbook. So that policy consideration where the insurers say regulators don't know the source is wrong. Also, DEC actually stated in the consent order that the town signed that plane crashes are at issue. They also said it in their fact sheet. All this is in the record. Was it plane crashes or testing in the event of a plane crash? In other words, simulation type? No, Your Honor. It was an actual plane crash and the firefighters came and sprayed foam which contained this contamination. So it actually resulted from the plane crash itself. But I thought there was also some because the federal government mandates simulation exercises which involve using the same materials to spray. Or am I wrong? Yes, absolutely, Your Honor. There are other instances of contamination. And that goes actually into the Your Product piece of this, which I think is briefed as well. I'm happy to answer any of your honors. Actually, does the report from the DEC in effect take a map and draw circles around things and say, here's an area that's on your runway where this plane crash apparently happened and here's another place in the airport where they do the training exercises and here is some similar pollution around a storage shed? So here the DEC actually conducted a very limited site characterization in an area where a plane crash was stored. Sorry, a plane that crashed was stored. It was a military plane that actually had to crash land at the airport. And there was a big international investigation that went on for six months and that crash plane was stored in this area. So that would result from the plane crash? Yes, absolutely. And so the DEC conducted its site characterization in that area and found very, very significant contamination both in the – I'm sorry, they just said groundwater there, in the groundwater. We then subsequently did soil investigations and found that there as well. So we have that. But is there a separate place on the airport grounds where training took place that is distinct from any place where a crash plane ever was? Yes, Your Honor. There is. But again, if I want to pull into the Your Product provision now. So the Your Product endorsement modifies or supplements the pollution exclusion, carbide. It adds another exception to the pollution exclusion that says if contamination is caused by or pollution is caused by pollution of your product, then there is coverage. And here, Your Product is defined as any product that has been disposed of by you, the insurer. So AFFF, the firefighting foam that caused all the contamination here, is certainly a product. I don't think they dispute that. What they do dispute is that the PFOS, which is the contaminant, was intentionally added to it. That is both unsupported and it's also incorrect to argue that. Number one, the town did not manufacture the PFOS. The town followed FAA direction on that. So the town had no basis to understand that when it was spraying the AFFF that it would cause contamination or cause pollution. It didn't know that the PFOS, the pollution, was in that. In addition, PFOS is a judicially determined pollutant. That is, there's case law to that effect. As I understood it, and this is in connection with CERCWA and Superfund sites, different statutes, we're not dealing with the same thing here, but my understanding was when the federal government says EPA, federal EPA, there's a problem, this site is contaminated, they look at the site as being contaminated, the underground, not a specific, it's a general location of the ground being contaminated and it needs to be cleaned up, and then everyone who dumped there, whether it was a can of oil or, you know, like BF Goodrich, a thousand, thousands of tires, they're responsible for their proportionate share. As I understood that it was more that the general contamination, whether it be a plane crash or simulated test, was causing overall underground contamination. Am I misreading that, or? The DEC is requiring the town to clean up the airport from the AFFF use. And AFFF is used for plane crashes. It was also used, as Your Honor pointed out, for training. So the town has to clean up all of that. That's for later on. The cleanup is for later on. What we're doing right now is investigating. And under New York law, investigation constitutes defense. So that's what we're talking about today. All we're talking about is where is the contamination in order to determine that allocation later on. And that's the appropriate methodology to do under the plain meaning of this policy. So just one more point. On page 8 of their reply brief. Can I just ask about your product? I was hoping we wouldn't have to get to that. But if we're getting to that, your product sounds to me, contamination of your product, sounds to me like you were harmed because your product somehow became contaminated, something you made. That's not what this is supposed to mean? What is the product here? The product is AFFF, which is firefighting foam. That's your product. Well, under the definition of your product under the policies, your product includes any product disposed of by you. Okay? It doesn't mean that you have to make it. Okay. So let's get past that. And that is your product. And it's covered in that sense. And it's the contamination caused by your product or contamination of your product. So, Your Honor, we have to look at the pollution exclusion and the endorsement together. Right? So what the pollution exclusion says is that contamination caused by plane crashes is covered. Contamination caused by pollution of your product is covered. That's the way we look at it. So if the pollution of your product, PFOS within the product, caused the contamination at the airport, which it did everywhere, then there's coverage. And so that's why this provision applies. The lower court did not reach that. That would seem to say — now I am having trouble figuring out what kind of pollution claim would not be covered. Many. Okay. Many, Your Honor. Let me give you one example. Absolutely. So under CERCLA, as Your Honor just mentioned, current owners are strictly liable. Right. So if somebody else owned the property previously and they polluted the land, you would still be on the hook for cleanup.  And at least unless you can unload it by inflating them or something. But you're on the hook. Absolutely. Or another example. Okay. You could bring in a third-party defendant. If you're the current owner, you could say, well, you know, I'm going to bring a third-party claim against the prior owner or whoever was dumping them. Absolutely. What you're saying is any pollution caused by any product that you used yourself, you're maintaining that that kind of — that's an exception to the no-pollution clause. Yeah. And that's an extraordinary circumstance. Pollution that we find nowadays generally is legacy pollution from industrial application. Right. So typically you're not seeing products being used in a manner that causes pollution. So that, you know, is a very narrow circumstance that applies here. So I just would like to point out one more piece. Counsel mentioned that our interpretation of the pollution exclusion would eliminate all coverage. That is just blatantly wrong. For example, at an airport. We're talking about an airport. I mentioned glycol. The icing of a plane would not fall under any of these. Because that's not a product you're disposing of. That's a product that you're using. Well, if a tenant — I'm sorry, Your Honor. You're right. If a tenant, for example, de-ices their airplane, right, your product wouldn't apply. I was talking more in isolation of the combined claims provision. Oh, I see. Okay. Which is what counsel referenced. Same thing. If a tenant, for example, tries to fuel their airplane and fuel spills. There's many, many examples in which the crash, fire, explosion exception to the pollution exclusion would not apply. And therefore, our reading, I think, is very reasonable, as well as the lower courts. We respectfully request that — It suggests that even in that situation, if it's in the same letter, you would say it's still one claim. Is that your position? If they put both of those things, you just — if that was combined in a letter, that you would still consider it to be one claim? As long as it — yeah. As long as there's a claim and the causes are behind the claim, we're not talking about causes with the combined claims, right? And that's also a different issue. You're talking about whether the policy is — I'm sorry, the claim is excluded or whether it's a combined claims or two separate issues. All right. Thank you very much, Your Honors. So counsel ended right where he began, which is where I wanted to begin, because I think that it's critical. It answers the question you raised earlier, Judge Bianco, which is their position is — and, indeed, it has to be — that there's one claim here because there's one initial paper that mentioned emergency incidents. I didn't realize one initial paper. It's one initial claim. You've got pollution that is caused by a particular thing. It's a particular thing we're saying is in the ground. What he was talking about at the end is something different, and maybe that's his position, but I'm not sure it's the same situation. If there was — we've got pollution from AFFF and pollution from glycol.  And it's understood that glycol is not anything that they have anything to do with. Somebody else does it. That might be two different claims. But here there's just one claim. Right. But here's exactly the problem, as he just conceded at the end of the argument. Normally, right, a letter comes from the NYSDEC, and it might say, to use your example, there are — there's pollution on your property. Some of it is, you know, excluded. Some of it is not. Their position would be — it is, and it has to be, given their argument, that because that initial claim was a demand for money, which is what qualifies as a claim under, you know, New York law for purpose of triggering notice provisions, as the district court said, because that initial overall demand is one claim, it doesn't matter that there are separately specified causes of the claims because there's one claim. So under their theory, even if it said, you know, you have pollution, and paragraph 1, we find that there's likely to be pollution from this excluded cause, and paragraph 2, there's likely — clause 2 and 3 still would not apply, because they think a claim is always ossified, becomes frozen in amber from that initial — no matter what the facts show, no matter, indeed, what the actual document says about multiple causes. You don't have multiple claims, according to them, because you have that one claim. That's that initial paper. And there's nothing in the policy that requires that reading. Indeed, it undermines the whole point of clauses 2 and 3, which is to say, no, no, when the facts show that there are multiple different causes, not only are we only going to cover the indemnification and remediation costs only for the non-excluded cause, but also we're changing the defense cost rule. We're not going to cover the entire suit. We're only going to pay for costs attributable to the covered cause. And that's why you cannot look at this from the initial paper being the only claim. What you have to look at is if, for example, the initial paper has multiple causes, then you know it's probably going to be broken out. But even if it doesn't specify multiple causes, it's the same — the same operation occurs when the facts show that there are multiple causes. Then what you have are combined claims combined into, you know, one combined claim. What happens if there is a single paper, as we're calling it, that says there is pollution from a particular chemical, period, and it's known that that chemical is used in dealing with air crashes, but there's no further specification in the claim? Don't you then have an obligation to defend at that point?  And when does it stop when you determine something later on? That's right. I mean, that is an exact example. But is that what happened here? No. No, because you're saying that we can tell from the very first letter that there are multiple causes. Well, that's correct. And we can certainly tell from the subsequent investigation. That is true. But who pays for the subsequent investigation? As Mr. Gatto points out, that's part of a defense, because once you start — you get this claim from the DEC, you've got to do a lot of testing and incur a lot of expenses to try to figure out whether they're right and what kind of — what the extent of the pollution is. And they have insurance against that. Well, but they only have insurance that pays for the investigation that's attributable to covered causes for environmental pollution. So the answer is they pay for the investigation unless and until facts establish, you know, that there's a — it's attributable to covered causes. And it's — I think Your Honor raised the point, or maybe it was Judge Lynch, it is normal in these investigations for a claim to evolve. And as in this case, there are areas of concern identified, and you can see them at Joint Appendix pages A448 to 49. It breaks the claim down into, I think, like 12 different areas that are each attributable to where they determine, for example, there was a plane crash, there was three plane crashes, there was a training, there was storage facilities, and other identified, you know,  So it breaks it down and says, we're going to investigate each of these, you know, independently. And just because there was a plane crash doesn't mean the — of course, the pollution — any pollution is covered, because you have to determine whether or not there was AFF, AFFF used in response to the claim. But that's exactly how these things work. They get broken down into AOCs, as in this case, and then that's the way you can allocate costs on a retroactive basis to those that are determined to be attributable to a covered pollution as opposed to excluded pollution, which is going to be, you know, most of the pollution in most situations. That's not a policy argument. That's just based on the plain objective of the language read in the context of what that language is intended to accomplish. Thank you, Your Honor. Thank you both for a reserved decision. Have a good day. Thank you.